STATE of Missouri, Respondent,

v.

McKinley LUE, Appellant.

No. 61656.

Supreme Court of Missouri, En Banc.

May 13, 1980.

Robert Beaird, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

MORGAN, Judge.

Appellant was convicted by a jury of robbery in the third degree[1] and was sentenced as a second offender to five years confinement. The Western District of the Court of Appeals, in an opinion written by Manford, J., affirmed the conviction and on appellant's motion transferred the cause to this Court pursuant to Rule 83.02 and Mo. Const. art. V, § 10. The transfer apparently was made that this Court might clarify its opinion in *State v. Light*, 484 S.W.2d 275 (Mo.1972), pertaining to the computation of time under a motion to disqualify a judge, as indicated in the concurring opinion of Somerville, J. We, too, affirm the judgment entered by the trial court.

Appellant and Willie Mae Hodge were jointly charged with acting in concert in extorting $60.00 from one Ms. Hemphill, who was a student at Lincoln University when she met appellant and Ms. Hodge. After at least two meetings with the pair and several telephone conversations with appellant, Ms. Hemphill testified that she told appellant she didn't want to see him or anyone connected with him again. Ms. Hemphill testified that a few days later she received a telephone call from appellant in which he threatened to have someone beat her or to beat her himself and have her parents' house burned down, ("that he had had it done before,") unless she would go to the house where he was staying and talk to him. She went to the house, and there he threatened her again, saying he would kill her, that he had people working for him who beat up and killed people "that did him wrong." Ms. Hemphill also testified that appellant forced her to go into the bedroom, again uttering threats, and then forced her to have sexual relations with him. Later appellant told Ms. Hemphill that if she told

---

1. Robbery in third degree was defined in § 560.130, RSMo 1969, since repealed by Laws 1977, p. 662 § 1 and replaced by § 569.030, RSMo 1978, as follows:

    If any person shall, either verbally or by a written or printed communication, accuse or threaten to accuse another of a felony, or shall threaten to do any injury to the person or property whatever of anyone, with a view or intent to extort or gain any money or property of any description belonging to another, and shall, by intimidating him with said accusation or threat, extort or gain from him any money or property, every such offender shall be deemed guilty of robbery in the third degree.

anyone about the incident he would send pictures of them in the bedroom to her parents. She testified that he told her he "had the bedroom rigged where he could take pictures."

Ms. Hemphill's appendix ruptured the next day, and while she was in the hospital she received phone calls from appellant saying he would carry out his threats to her if she told anyone of the sexual assault. Upon being released from the hospital Ms. Hemphill went to her parents' home in St. Louis for two weeks, and appellant called her several times "trying to pressure me into hurrying up and coming back to Jefferson City." When she did return to school in Jefferson City, Ms. Hemphill testified that she received other threatening phone calls from appellant, during one of which he demanded money from her. She wrote a check for $60 for Ms. Hodge at appellant's demand, she testified. Appellant had threatened to send the pictures of them in the bedroom to her parents and to have the pictures posted on campus. She testified that he also said he would have a man called G.W. beat her up. More threats were made by appellant and more checks were written or cashed, Ms. Hemphill said.

The right to disqualify a judge by reason of his alleged interest or prejudice is established in § 545.660, RSMo,[2] and supplemented by Supreme Count Rule 30.12.[3] At a minimum, exercise of the "right" requires a reasonable notice to the opposite party and filing of an affidavit alleging the prejudice "not less than five days before the day the case has been set for trial." In this case,

appellant's motion for disqualification of the trial judge was overruled for failure to meet both conditions. The docket entry read: "Let the record show the motion to disqualify the Judge is overruled, having been filed out of time and failure to give prior notice to the Prosecuting Attorney."

The facts pertinent to this initial issue are: The captioned cause had been set for trial on Wednesday, February 22, 1978; notice was given to the prosecuting attorney on February 14; the motion to disqualify and the required affidavit were filed with the court on Wednesday, February 15. Rule 31.01 (captioned—Time, Computation of) provides, in part, that: "When the allowed period is less than seven days, intermediate Sundays and legal holidays, if any, shall be excluded in the computation." [4]

■ It is agreed that the day of filing (15th) does not count, and the rule itself eliminates Sunday (19th) and the following Monday (20th), which was a legal holiday. Thus, the only days available to count toward the "five days" requirement are: Thursday—the 16th, Friday—the 17th, Saturday—the 18th and Tuesday—the 21st. There being only four days, clearly, the filing was not "five days *before* the day the case [had] been set for trial." Any dictionary definition of the word "before" includes expressions such as "earlier than," "preceding," or "in advance of," and the trial setting date cannot be used to obtain the fifth day. Unfortunately, this Court inadvertently suggested otherwise in State v. *Light,* *supra.* There, the case was set for trial on

---

2. Section 545.660 provides in part:
     When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases: . .

     (3) When the judge is in anywise interested or prejudiced or shall have been counsel in the cause . . . .

3. Rule 30.12 repeats much of what it said in § 545.660 and adds:
     The judge shall be disqualified under the provisions of this Rule if, having previously given reasonable notice to the opposite party, the defendant or the prosecuting attorney

shall file an affidavit stating the defendant or the state, as the case may be, cannot have a fair and impartial trial by reason of the interest or prejudice of the judge. Said affidavit must be filed not less than five days before the day the case has been set for trial . . . .

4. Note should be made that the rule (now numbered 20.01) was amended as of January 1, 1980, to exclude Saturdays also by now reading: "When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."

Wednesday, October 28. The "filing" was on Friday, October 23. The Court said, at 275, that: "The motion was filed only four days before trial date, the day of filing and the intervening Sunday not being counted under Rule 31.01." The correct number of days countable under the rule should have been three, i. e., Saturday—October 24, Monday—October 26, and Tuesday—October 27. Any indication otherwise found in *State v. Light* should be rejected.

Appellant's affidavit and motion having failed because not timely filed makes it unnecessary to discuss whether or not this notice to the prosecuting attorney was "reasonable."

■ Appellant also claims that the trial court erred in admitting testimony by the victim about prior and subsequent threats against her by appellant and about other checks she said she wrote for his benefit as a result of those threats. All of the testimony about the threats came into the record without objection. Appellant now asks that this testimony be reviewed pursuant to Rule 29.12(b) which permits "[p]lain error affecting substantial rights" to be considered on appeal, though not raised in the trial court or preserved for review "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."[5] Before this rule can be invoked, however, "there must be a sound, substantial manifestation . . . a strong, clear showing, that injustice or miscarriage of justice will result . . . ." *State v. Meiers*, 412 S.W.2d 478 (Mo.1967).

■ The general rule is that proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to establish directly the defendant's guilt of the charge for which he is on trial. Among the exceptions to this rule is that evidence of other crimes is competent when it tends to establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one

tends to establish proof of the other. Crimes are not so related when they "are not so blended or connected that the investigation of one involves an inquiry into the other." *State v. Buxton*, 324 Mo. 78, 22 S.W.2d 635, 637 (1929); *State v. Spray*, 174 Mo. 569, 577, 74 S.W. 846, 849 (1903); *State v. Goetz*, 34 Mo. 85, 91 (1863). The more modern statement of this definition as quoted in *State v. Griffin*, 497 S.W.2d 133, 135 (Mo.1973) is "where two distinct offenses are so inseparably connected that proof of one necessarily involves proving the other . . . ." The testimony here fell within the above exception because it revealed a pattern of conduct designed to intimidate the victim to such an extent that she would give appellant money. The pertinent statute, § 560.130, RSMo 1969, required that money or property be gained by intimidation through accusation or threat. Each act of extortion was inseparably connected to the other in proving the element of intimidation and therefore was admissible under the stated exception.

■ In this regard appellant also complains of testimony of a defense witness on direct examination about a conversation he had with the victim in which she told him that appellant had threatened her with a beating by another man and had claimed that he had arranged to have houses burned in Mobile, Alabama. Appellant also points to a remark by the same witness, the Cole County sheriff, on direct that he had interviewed the victim in the course of an extortion and kidnapping investigation. The fact that his testimony was elicited on direct examination by appellant militates against its consideration under the plain error rule. In addition, statements about the other threats would fall within the exception discussed above, and the reference about the sheriff's investigation of other crimes was in no way linked to appellant by the sheriff. The mere mention of another offense is not per se prejudicial in the trial of a criminal case. *State v. Blocton*, 394

---

5. Rule 29.12(b) is a new rule effective January 1, 1980, supplanting former Rule 27.20(c) on plain error.

S.W.2d 323, 325 (Mo.1965). No error occurred in this instance.

Appellant also complains that the scope of cross-examination of the sheriff by the state was impermissibly broad, resulting in prejudicial error. On direct, the sheriff was asked to relate parts of his conversation with the victim during an investigation of another crime. Appellant's counsel presented the sheriff with a typed transcript of the conversation, which the sheriff had tape recorded, and urged the sheriff to use the transcript to "refresh his recollection." Appellant's counsel then inquired of the sheriff about the victim's statements about the first check written on May 13. During this examination the prosecutor objected to the witness's reliance on the transcript in testifying, saying the document was entirely hearsay and that no proper foundation had been laid for its use in proving a prior inconsistent statement by the victim about the nature of the threats made by appellant in connection with the first check. The trial court overruled the objection but twice cautioned appellant's counsel that he couldn't "just hunt and pick at the statement." On cross-examination, the prosecutor sought to inquire about the rest of the conversation between the sheriff and the victim. Appellant's counsel objected, saying that unless the testimony was confined to the May 13 check, it would be beyond the scope of direct examination, adding that the prosecutor should not "be permitted to just wander about the statement." The prosecutor in response asked that all the testimony concerning the conversation be stricken as hearsay. The court, however, declined to limit the state's cross-examination, telling appellant's counsel, "You let it in, we might as well let the rest in."

■ Great latitude is allowed on cross-examination in a criminal case, *State v. Murrell*, 169 S.W.2d 409, 411 (Mo.1943); *State v. Albritton*, 328 Mo. 349, 40 S.W.2d 676, 680 (1931); and the trial court is invested with much discretion in determining the extent of cross-examination. *State v. Johnson*, 486 S.W.2d 491, 496 (Mo.1972);

*State v. Turner*, 320 S.W.2d 579, 584 (Mo. 1959). Pertinent to this claim is the holding that a defendant is not in a position to complain of the state inquiring about matters brought into the case by his own questions. See *State v. Holmes*, 419 S.W.2d 15, 17 (Mo.1967); *State v. Crocker*, 275 S.W.2d 293, 296 (Mo.1955). Inasmuch as appellant's counsel insisted on the witness's use of the transcript to refresh his recollection, no abuse of discretion occurred in then permitting the state to cross-examine the sheriff as to the remainder of the conversation as it bore on appellant's attempt to impeach the victim's testimony.

In connection with the above point, appellant claims that the broad scope of cross-examination permitted the state to make the sheriff its own witness, thereby entitling appellant to cross-examine the sheriff rather than being limited to redirect examination. In addition, appellant contends that even if the sheriff did not become the state's witness, appellant still should have been permitted to impeach the sheriff because he had become a hostile witness. Appellant says it is clear that the sheriff was hostile because "he had investigated appellant's activities and had apparently participated in his arrest . . . the testimony which the sheriff gave on cross-examination by the State . . . was clearly harmful to Appellant's cause."

■ "As a general rule, a party cannot impeach a witness whom he has introduced either in a civil or criminal case where such a party is not prejudiced by the testimony because of entrapment, hostility or surprise." *Conner v. Neiswender*, 360 Mo. 1074, 232 S.W.2d 469, 473 (1950). The factors that appellant claims indicate the sheriff's hostility do not serve to persuade this Court that appellant was entitled to cross-examine his own witness. The sheriff's role in this case must have been apparent to appellant before he called the sheriff as a witness. Moreover, no claim has been made here that the sheriff testified in a manner inconsistent with the transcript which appellant's counsel presented to the sheriff during his testimony. The fact that the

sheriff's testimony included information unfavorable to appellant, although presumably known to the appellant by virtue of his prior possession of the transcript, does not entitle the sponsoring party to cross-examine his own witness. This point is denied.

■ This evidence is attacked once more by appellant as constituting hearsay. Apparently appellant would have us rule that testimony of the conversation between the sheriff and victim, brought out by appellant on direct examination, was not hearsay and was properly admitted, but that evidence of the same conversation given on cross-examination was improperly admitted as hearsay. The weakness of this claim is apparent, and the point is summarily denied.

■ Instruction No. 5 is the target of appellant's last attack. The instruction patterned after MAI–CR 2.10 read:

All persons are guilty who knowingly act together with a common purpose of committing an offense, or who, whether present or not, knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance is the act of each of them.

Appellant contends the giving of this instruction was improper because the evidence was not sufficient to sustain a conviction on the theory that appellant aided or encouraged others in the commission of the offense of robbery in the third degree.

The Notes on Use following MAI 2.10 indicate that this instruction should be used "where there is evidence (a) that defendant was an active participant in the crime or its attempts, even if he was not the principal actor . . . ." Where the evidence justifies it, this instruction must be given whether requested or not. Although appellant's precise complaint is unclear, apparently implicit in its assertion is the claim that the evidence showed him to be guilty, if at all, as the principal, and therefore it was impermissible for the state to have the jury consider him as an aider or abettor. This claim has been rejected before. See *State v. Garton*, 371 S.W.2d 283, 289 (Mo. 1963); *State v. Lunsford*, 331 S.W.2d 538, 540–41 (Mo.1960).

Evidence pertinent to the giving of MAI–CR 2.10 included the testimony of the victim that she was coerced into writing the check payable to Willie Mae Hodge, that Ms. Hodge came to the victim's dormitory and picked up the check, that other checks and cash were given to Ms. Hodge in response to appellant's threats; the arresting officer's testimony that appellant admitted that he instructed the victim to write the checks to Ms. Hodge although he ultimately received the proceeds; and Ms. Hodge's testimony that she gave the proceeds of the May 13 check to the appellant. In addition, the information filed against appellant also charged Ms. Hodge with acting in concert and extorting $60 from the victim. Appellant and Ms. Hodge were arraigned at the same time, and both pleaded not guilty at that time. This evidence was sufficient to require the giving of MAI–CR 2.10, and it was not error to give that instruction where evidence of joint action was present even though the evidence tended to prove that appellant was the chief actor in the crime.

Judgment is affirmed.

All concur.